# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **MOBILE MARK, INC.**, | ) |
| Plaintiff, | ) ) |
| v. | ) ) No. 11 C 2983 |
| **DANIEL PAKOSZ**, Individually and as Agent of Denke Laboratories, Inc. and Hascall-Denke Corporation; **DENKE LABORATORIES, INC.**, and **HASCALL-DENKE CORPORATION**, | ) ) ) ) ) ) |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Mobile Mark, a designer and seller of commercial antenna products, sued one of its former engineers, Daniel Pakosz ("Pakosz"), along with industry competitors, Hascall-Denke Corporation and Denke Laboratories, Inc. (together, "Hascall-Denke"), for violation of the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/2, the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and the Illinois Computer Crime Prevention Law ("ICCPL"), 720 ILCS 5/16D-3. In addition, Mobile Mark asserts common-law claims for breach of contract, conspiracy, spoliation, and injunctive relief.

In brief, the amended complaint alleges that, before leaving Mobile Mark to work for Hascall-Denke, Pakosz accessed Mobile Mark's computer system and copied proprietary information to a laptop that Mobile Mark had loaned him. Pakosz allegedly

transferred the proprietary data to a number of external storage devices, and then installed and repeatedly ran a "Window Washer" program on the laptop to delete files and other data in order to conceal his activities. According to Mobile Mark, Pakosz turned its trade secrets over to Hascall-Denke, which used the information to manufacture knock-off versions of Mobile Mark's antennas.

Defendants have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss each of the seven counts alleged in Mobile Mark's amended complaint. For the reasons explained below, the motion is granted in part and denied in part.

I.

Count I of Mobile Mark's amended complaint alleges a claim under the ITSA. Defendants first maintain that the claim must be dismissed because Mobile Mark fails to identify the alleged purloined trade secrets with sufficient specificity. This contention is unpersuasive. As courts have frequently noted, "ITSA plaintiffs are not required to plead highly specific facts on improper trade secret use, because such facts often will not be available before discovery." *Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 771 (N.D. Ill. 2009); *see also Sentry Pool v. Wave Tec Pools, Inc.*, No. 07-4082, 2008 WL 3200837, at *3 (C.D. Ill. Aug. 6, 2008); *AutoMed Technologies, Inc. v. Eller*, 160 F. Supp. 2d 915, 920-21 (N.D. Ill. 2001). Although Mobile Mark does not identify particular trade secrets, the amended complaint singles

out several specific antennas that Hascall-Denke allegedly developed based on its use of the proprietary information. At this stage of the litigation, the degree of detail provided in the amended complaint is more than adequate.

The case on which defendants rely, *Maclean-Fogg Co. v. Edge Composites, L.L.C.*, No. 08 C 6367, 2009 WL 1010426 (N.D. Ill. Apr. 14, 2009), is inapposite. While the court there dismissed the plaintiff's ITSA and other claims for failing to identify the trade secret on which the suit was based, the allegations made in support of the claim were entirely conclusory. Mobile Mark's complaint provides substantial factual enhancement for its ITSA claim.

The parties also dispute whether Count I sufficiently alleges an ITSA claim under a so-called "inevitable disclosure" theory. It is unclear whether defendants take this alleged defect to be fatal to Mobile Mark's entire ITSA claim, or whether they believe that it simply forecloses Mobile Mark from relying on inevitable disclosure as a way of proving its ITSA claim. In either case, defendants' argument fails. As the Illinois Court of Appeals has explained, "[u]sing a theory of inevitable disclosure, a plaintiff may prove a claim of trade secret misappropriation by demonstrating that defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets." *Stenstrom Petroleum Services Group, Inc. v. Mesch*, 874 N.E.2d 959, 976 (Ill. App. Ct. 2007) (quotation marks omitted). "Inevitable disclosure is not assumed when an

employee has general information in his head as a result of working for a company." *Saban v. Caremark Rx, L.L.C.*, --- F. Supp. 2d ----, 2011 WL 1356943, at *33 (N.D. Ill. Apr. 11, 2011). "However, where evidence exists that the employee copied the employer's confidential information, it leads to the conclusion of inevitable disclosure." *Id.* "When evaluating whether the disclosure of trade secrets is inevitable, courts also consider: (1) the level of competition between the former employer and the new employer; (2) whether the employee's position with the new employer is comparable to the position he held with the former employer; and (3) the actions the new employer has taken to prevent the former employee from using or disclosing trade secrets of the former employer." *Id.*

Taking these factors into account, Mobile Mark's complaint states a claim for misappropriation of trade secrets via the inevitable disclosure theory. First and foremost, Mobile Mark plainly alleges that Pakosz copied its proprietary information. In addition, the amended complaint indicates that Mobile Mark and Hascall-Denke are competitors, and that Pakosz's position with Hascall-Denke is comparable to his former position at Mobile Mark. Moreover, according to the complaint, Hascall-Denke made no effort to prevent Pakosz from disclosing Mobile Mark's proprietary information. On the contrary, Mobile Mark claims that Hascall-Denke actively encouraged Pakosz's disclosure of the information.

In short, the amended complaint alleges an ITSA claim under an inevitable disclosure theory. Defendants' motion to dismiss as to Count I is denied.

Count II of the amended complaint alleges a claim under the CFAA. "To state a civil claim for violation of the CFAA, a plaintiff must allege: 1) damage or loss; 2) caused by; 3) a violation of one of the substantive provisions set forth in § 1030(a); and 4) conduct involving one of the factors in § 1030(c)(4)(A)(i)(I)-(V)." *Cassetica Software, Inc. v. Computer Sciences Corp.*, No. 09 C 0003, 2009 WL 1703015, at * 3 (N.D. Ill. June 18, 2009). For purposes of the third of these requirements, the substantive provision on which Mobile Mark relies is § 1030(a)(2), which makes it a violation of the CFAA to "intentionally access[] a computer without authorization or exceed[] authorized access, and thereby obtain[] information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). With respect to the fourth requirement, Mobile Mark relies on the factor set forth in § 1030(c)(4)(A)(i)(I), which applies to offenses involving "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I).

Defendants argue that Count II must be dismissed for several reasons, none of which are persuasive. First, defendants object that "Mobile Mark has not alleged any particular file or document

that Pakosz allegedly accessed without authorization." Mem. at 7. They also argue that Mobile Mark has failed to allege that Pakosz lacked permission to copy or transfer files to his Mobile-Mark laptop. Defendants are incorrect in assuming that Mobile Mark's CFAA claim must be set forth with such particularity. As with the allegations in support of its ITSA claim, the complaint provides defendants with ample notice of the basis for Mobile Mark's CFAA claim. Thus, for example, while the amended complaint does not list the particular files or documents accessed by Pakosz, it does specify the date and time when Pakosz's unauthorized activity took place.

Defendants also argue that Count II must be dismissed because Mobile Mark has failed to allege that the files on which the claim is based "involved interstate commerce." Mem. at 8. This argument fails for several reasons. As an initial matter, it is unclear why Mobile Mark's CFAA claim should be required to include allegations to this effect. This is so not only because such particularity is not required under federal notice pleading standards, but also because the portion of the CFAA on which Mobile Mark relies simply does not require any showing that the files at issue had anything to do with interstate commerce. While other parts of the statute embody such a requirement, *see, e.g.*, 18 U.S.C. § 1030(a)(6)(applying to anyone who "knowingly and with intent to defraud traffics . . . in any password or similar information

through which a computer may be accessed without authorization, if . . . such trafficking affects interstate or foreign commerce"); 18 U.S.C. § 1030(a)(7)(applying to anyone who "with intent to extort from any person any money or other thing of value, transmits in interstate or foreign commerce any communication containing" threats or demands of particular kinds), no such language appears in the provision on which Mobile Mark's claim is premised, 18 U.S.C. § 1030(a)(2).

Yet even if such allegations were required defendants' argument would be unavailing. The amended complaint specifically states that "Mobile Mark's computer systems are 'protected' computers within the meaning of the Computer Fraud and Abuse Act because they are used in and affect interstate commerce." Am. Compl. ¶ 64. In addition, the complaint alleges that Mobile Mark is located in Illinois; that Hascall-Denke is located in Florida; and that Pakosz's malfeasance involved accessing computers and obtaining information in Illinois and turning it over to Hascall-Denke in Florida. These allegations are enough to indicate the interstate character of the conduct at issue in Mobile Mark's CFAA claim. *See, e.g.*, *Modis, Inc. v. Bardelli*, 531 F. Supp. 2d 314, 318-19 (D. Conn. 2008) (factual allegations concerning the office locations set forth a plausible claim that defendant engaged in an interstate or foreign communication where complaint's claims involved a Florida corporation with at least one office in

Connecticut).

In their reply brief, defendants further argue that Count II must be dismissed because Mobile Mark fails to allege that it suffered any loss in connection with Pakosz's alleged activity. Once more, this is inaccurate. The amended complaint asserts that Mobile Mark was forced to perform a forensic computer analysis in order to investigate Pakosz's alleged wrongdoing, and that it lost more than $5,000 due to Pakosz's improper use of its data. *See* Am. Compl. ¶ 65. Further, Mobile Mark alleges that, as a result of defendants' actions, it has suffered a loss of "customers, goodwill, sales, and business opportunities." *Id.* ¶ 58. In short, the allegations in Mobile Mark's complaint are not deficient in any of the respects asserted by defendants. As to Count II, therefore, their motion to dismiss is denied.

For largely the same reasons, defendants' motion fails insofar as it seeks dismissal of the ICCPL claim in Count III of the complaint.[1] Mobile Mark relies in particular on the statute's computer-tampering provision, which authorizes a plaintiff to bring a civil action where a defendant:

> [i]nserts or attempts to insert a "program" into a
> computer or computer program knowing or having reason to

---

[1] On July 1, 2011, the ICCPL's provisions were renumbered and slightly rewritten. *See* 720 ILCS 5/17-51(a)(4). The changes are not substantive and are not material to the disposition of the instant motion.

> believe that such "program" contains information or commands that will or may damage or destroy that computer, or any other computer subsequently accessing or being accessed by that computer, or that will or may alter, delete or remove a computer program or data from that computer, or any other computer program or data in a computer subsequently accessing or being accessed by that computer, or that will or may cause loss to the users of that computer or the users of a computer which accesses or which is accessed by such "program."

720 ILCS 5/16D-3(a)(4).

Defendants argue that Count III must be dismissed because Mobile Mark fails to allege that Pakosz lacked permission to delete files from his Mobile Mark laptop, and because Mobile Mark fails to allege that it suffered any loss as a result of defendants' conduct. Mem. at 10. Both of these charges are simply inaccurate. *See, e.g.*, Am. Compl. ¶ 68 ("Pakosz, acting on his own behalf and as an agent of Hascall-Denke, knowingly and without or in excess of authorization . . . deleted and removed data from a computer or network."); Am. Compl. ¶ 70 ("As a direct and proximate result of Pakosz and Hascall-Denke's Computer Tampering, Mobile Mark has suffered substantial injuries, including but not limited to the loss of customers, goodwill, sales, and business opportunities."). Accordingly, defendants' motion to dismiss Count III is denied.

In Count IV, Mobile Mark asserts a claim for breach of contract, alleging that in divulging its proprietary information, Pakosz violated the Trade Secrets Agreement ("TSA") he entered into during his employment with Mobile Mark. Again, defendants insist that Mobile Mark's complaint is defectively pleaded. Specifically,

defendants claim that Mobile Mark has "failed to identify what it is about Hascall-Denke's prototypes that indicate that they incorporate Mobile Mark 'trade secrets'," and that "Mobile Mark has not even stated what 'trade secrets' Pakosz allegedly took and used." Mem. at 12. As discussed above, it is unnecessary for Mobile Mark to identify the trade secret information at issue in any greater detail than that provided in the amended complaint. Curiously, defendants further contend that "Mobile Mark has not plausibly alleged that Pakosz breached the TSA by taking trade secrets to Hascall-Denke." Mem. at 12. This allegation, too, is clearly advanced in the complaint. Indeed, it is the fulcrum on which the entire action rests. As to Count IV, therefore, defendants' motion to dismiss is denied.

Count V of the amended complaint asserts a cause of action for civil conspiracy. Defendants argue that the claim must be dismissed because it is preempted by the ITSA. Section 8 of the ITSA states that it "is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 ILCS 1065/8(a). While the ITSA may indeed preempt conspiracy claims in some cases, however, there is no blanket rule to this effect. The ITSA preempts only those claims that are dependent upon the existence of trade secrets. *See, e.g.*, *Medallion Products, Inc. v. McAlister*, No. 06 C 2597, 2008 WL 5046055, at *16

(N.D. Ill. Nov. 20, 2008); *Abanco Intern., Inc. v. Guestlogix Inc.*, 486 F. Supp. 2d 779, 781 (N.D. Ill. 2007).

Mobile Mark alleges that defendants conspired to violate both the CFAA and the ICCPL, and to breach Pakosz's Trade Secrets Agreement with Mobile Mark. As seen above, the claims under the CFAA and the ICCPL do not presuppose the existence of trade secrets. Rather, Mobile Mark's CFAA claim is based on unauthorized access to Mobile Mark's computers, and its ICCPL claim is based on the deletion of information from Mobile Mark's computers. Insofar as it is predicated on these statutes, therefore, Mobile Mark's conspiracy claim is not preempted. *See, e.g.*, *EBI Holdings, Inc. v. Butler*, No. 07-3259, 2009 WL 400634, at *5 (C.D. Ill. Feb. 17, 2009) ("[T]he alleged unlawful acts set out in the First Amended Complaint go beyond trade secret misappropriation. Thus, the civil conspiracy count was not dependant upon misappropriation and is not preempted by ITSA.").

In contrast, however, Mobile Mark's claim that defendants conspired to breach the Trade Secrets Agreement is inextricably bound up with the complaint's trade secret misappropriation allegations. Specifically, the breach-of-contract claim alleges that "Pakosz breached the Trade Secrets Agreement [by]: (a) using Mobile Mark's trade secrets for purposes not necessary for or related to his employment; (b) using those trade secrets for competitive and other improper purposes; (c) disclosing trade

-11-

secrets to Hascall-Denke; (d) failing to return trade secrets in his possession, including those he improperly copied onto thumb drives prior to his termination; and (e) removing trade secrets from Mobile Mark's premises without authorization." Compl. ¶ 75.

Mobile Mark correctly points out that the ITSA does not preempt breach-of-contract claims. *See, e.g.*, *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404 (7th Cir. 2005) ("This statute abolishes claims other than those based on contract arising from misappropriated trade secrets, replacing them with claims under the Act itself."); *Stereo Optical Co., Inc. v. Judy*, 2008 WL 4185689, at *4 (N.D. Ill. 2008) ("The preemptive effect does not reach to contractual remedies or other civil remedies that are not based upon misappropriation of a trade secret.") (quotation marks omitted). At issue here, however, is whether the ITSA preempts a claim for conspiracy to breach a contract. The fact that breach-of-contract claims themselves are not preempted does not mean that tort claims based on underlying breaches of contract are not preempted. *See, e.g.*, *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 976 (N.D. Ill. 2000) (claim for tortious interference with confidentiality agreement was preempted by ITSA); *Aspen Marketing Services, Inc. v. Russell*, No. 09 C 2864, 2009 WL 4674061, at *6 (N.D. Ill. Dec. 3, 2009). Thus, to the extent that Count V alleges a conspiracy to breach the Trade Secrets Agreement, it is preempted. Insofar as Count V is predicated on violations of

the CFAA and ICCPL, however, the motion to dismiss is denied. *Cf. Dick Corp. v. SNC-Lavalin Constructors, Inc.*, 2004 WL 2967556, at *11 (N.D. Ill. 2004) (tortious interference claim was preempted insofar as it was based upon misuse of ideas but not insofar as it was based upon the solicitation of its employees); *Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 410 (N.D. Ill. 2001) (same).

Count VI of the complaint purports to assert a claim for intentional and negligent spoliation. Defendants are correct that any claim for intentional spoliation must be dismissed because the Seventh Circuit has squarely stated that there is no such cause of action under Illinois law. *See, e.g.*, *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509-10 (7th Cir. 2007) ("The Supreme Court of Illinois has emphasized . . . that the state does not recognize a tort of intentional spoliation of evidence.") (citing *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 269-70 (1995)).

However, I decline to dismiss Mobile Mark's claim for negligent spoliation. To be sure, defendants are correct in observing that Illinois does not recognize a freestanding tort of negligent spoliation as such. *Id.* at 509-10. The issue is merely terminological, however, because Illinois courts have treated negligent spoliation claims as a particular species of ordinary negligence claims. *Id.* Specifically, Illinois courts have explained that "[i]n order to prevail on a claim of negligent

spoliation of evidence, a party must show that (1) the party alleged to have been negligent had a duty to preserve the evidence, (2) the party breached that duty, (3) the breach proximately caused an injury, and (4) the party seeking compensation for negligent spoliation suffered actual damages as a result." *Jones v. O'Brien Tire and Battery Service Center, Inc.*, 871 N.E.2d 98, 105 (Ill. App. Ct. 2007).

Defendants maintain that the negligent spoliation claim is inadequately pleaded because Mobile Mark has not alleged that the information allegedly destroyed by Pakosz is irretrievable and has not been preserved in some other place. If the deleted information remains available and is simply stored in some other location, they argue, Mobile Mark cannot show that Pakosz's alleged deletion of the information from the laptop resulted in any harm. In support of this argument, they cite *Village of Roselle v. Commonwealth Edison Co.*, 859 N.E.2d 1 (Ill. App. Ct. 2006). There, the court dismissed the negligent spoliation claim because the plaintiff had failed to allege that the information in question – various "snapshots" or copies of electronic tax data existing in the defendant's business records – had been lost and could not be recreated. As a result, the court held that the plaintiff had failed adequately to plead the claim's causation requirement.

For several reasons, *Roselle*'s reasoning is not applicable here. For one thing, the notion that the plaintiff was required

specifically to plead that the lost data could not be recreated was based on the court's application of Illinois' fact-pleading requirements. *Id.* at 19-20. It is well-settled that when state-law claims are litigated in federal court, Fed. R. Civ. P. 8(a)'s notice-pleading standard applies. *See, e.g.*, *Christensen v. County of Boone, IL*, 483 F.3d 454, 466 (7th Cir. 2007) ("[W]hen federal courts entertain claims under state law – whether under the diversity jurisdiction of 28 U.S.C. § 1332 or . . . the supplemental jurisdiction of 28 U.S.C. § 1367 — it is not necessary to plead facts matching elements of legal theories."). Moreover, the nature of the data at issue in *Roselle* is altogether different from that alleged here. Here, unlike in *Roselle*, the deleted information has not simply been culled from an underlying data source that remains extant. The documents and information relevant to Mobile Mark's negligent spoliation claim do not consist merely of the trade secret data that Pakosz allegedly accessed, copied, and deleted, but rather, in the computer data indicating that Pakosz performed the latter operations. Hence, the fact that some the documents at issue in the case might exist in another location does not impugn Mobile Mark's negligent spoliation claim.

Defendants also argue that Count VI fails because, under Illinois law, the possibility of civil litigation does not automatically impose a duty upon a person to preserve all documents under his control. Such a duty is required, they maintain, only

where "a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action." Mem. at 14. According to defendants, the amended complaint "contains no factual allegations supporting Mobile Mark's conclusion that the deleted files would have contained evidence of wrongdoing." *Id.* Despite defendants' protestations to the contrary, however, the amended complaint contains numerous allegations precisely to this effect. Indeed, according to Mobile Mark, Pakosz deliberately deleted the information because he knew that, if discovered, it was likely to result in legal action being taken against him. Defendants go on to argue that the facts as pleaded do not support the conclusion that the files in question contained proprietary Mobile Mark data. This is beside the point, however, since a claim for spoliation does not require that the destroyed information be proprietary in nature; it requires only that the information be material to potential civil litigation.

Lastly, defendants argue that Mobile Mark's claim for a preliminary and permanent injunction in Count VII must be dismissed because an injunction is merely a type of relief, not a freestanding claim under Illinois law. As a strictly doctrinal matter, defendants are correct. *See, e.g.*, *Chicago Police Sergeants Ass'n v. City of Chicago*, No. 08-cv-4214, 2011 WL 2637203, at *9 (N.D. Ill. July 6, 2011); *AT & T Capital Services, Inc. v. Shore Financial Services, Inc.*, No. 09 CV 1360, 2010 WL 2649874, at *17

(N.D. Ill. June 30, 2010). The fact that Count VII must be dismissed, however, does not settle the substantive question of whether Mobile Mark is in fact entitled to such relief. On the contrary, that issue has been addressed separately and at length in a Report & Recommendation recently submitted by Magistrate Judge Kim, which concludes that Mobile Mark is indeed entitled to a preliminary injunction, and has yet to be definitively determined.

II.

For the reasons discussed above, defendants' motion to dismiss is granted in part and denied in part.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: September 6, 2011